Amanda S. PIERCE, James Pierce, by his mother Susan Pierce, and Susan Pierce, individually, Plaintiffs–Appellants,

v.

SULLIVAN WEST CENTRAL SCHOOL DISTRICT and Rod McLaughlin, Defendants–Appellees.

No. 03–9292.

United States Court of Appeals, Second Circuit.

Argued June 10, 2004.

Decided Aug. 11, 2004.

Robert N. Isseks (Alex Smith, on the brief), Middletown, NY, for Plaintiffs–Appellants.

Paul G. Ferrara (Samuel L. Young, on the brief), Costello, Cooney & Fearon, Syracuse, NY, for Defendants–Appellees.

1. The Honorable Timothy C. Stanceu, Judge of United States Court of International Trade, sitting by designation.

2. Other claims in the original action against the principal of the school, Rod McLaughlin,

Before: WALKER, Chief Judge, JACOBS, Circuit Judge, and STANCEU, Judge.[1]

WALKER, Chief Judge.

This case presents the question of whether New York's Education Law that allows "released time" from public schools for religious instruction was implemented in such a way as to violate the Establishment Clause of the First Amendment to the United States Constitution ("Establishment Clause"). Finding the facts in this case to be controlled by the Supreme Court's holding in *Zorach v. Clauson*, 343 U.S. 306, 72 S.Ct. 679, 96 L.Ed. 954 (1952), we affirm the district court's grant of summary judgment for defendants-appellees.

### FACTS

Plaintiffs-appellants Amanda S. Pierce, James Pierce, and their mother, Susan Pierce (collectively, "the Pierces"), appeal from an order of the United States District Court for the Southern District of New York (George A. Yanthis, *Magistrate Judge* ) granting summary judgment to defendant-appellee Sullivan West Central School District ("defendant school district" or "school district") on the Pierces' claim that the school district's "released time" policy in effect from 1987 to 1992 violated the Establishment Clause.[2] Amanda and James were both at one time students in the school district. Amanda is Jewish and James is an atheist; neither was released from compulsory school attendance to participate in religious instruction under the "released time" program.

 The Pierces filed an action for declaratory relief and damages under 42 U.S.C. § 1983 [3] in which they alleged that

survived summary judgment but were rejected by the jury and are not appealed here.

3. Although qualified immunity is not available for the school district even if its actions were undertaken in good faith, *see Owen v. City of*

defendant school district violated their First Amendment rights under the Establishment Clause in its implementation of New York's "released time" law in the years 1987 to 1992.[4] That law, New York Education Law § 3210(2)(b), and a related regulation, 8 N.Y.C.R.R. § 109.2, allows public school districts to run "released time" programs in order to facilitate the religious education of students whose parents wish their children to participate in religious instruction during the school day, provided that the students are released for only one hour per week at the close of the morning or afternoon session.

In 1987–1992, the school attended by Amanda and James Pierce allowed students to be released to participate in religious instruction at a Catholic church next door to the school or at a program conducted by the Protestant-based Child Evangelism Fellowship, which met at a town hall across the street from the school. Participation in either program required parental permission and was limited to one hour of instruction in the middle of every Tuesday morning. Those students whose parents did not allow them to attend religious instruction remained in the school classroom without organized activities, awaiting the return of the participants in the "released time" program. At the school, no "released time" programs had been organized for Jewish students, atheists, or students practicing other religions. The Pierces concede, however, that they did not want a "released time" arrangement providing religious instruction of any kind.

The Pierces allege that the way the program was implemented violated their Establishment Clause rights because it (1) humiliated them, (2) left non-participants in the program with nothing to do during compulsory time that must be spent in the classroom and gave teachers no guidance on how to use that time, (3) conveyed a message of endorsement of religion to especially susceptible young pupils during prime learning time, (4) violated the terms of the regulation by allowing students to leave in the middle of the morning, and (5) enabled the students receiving religious instruction to bring religious literature into the classrooms. The Pierces further claim that the "released time" program led to abusive religious invective directed against those who did not participate and that the school district did not adequately train teachers and principals to protect non-participants from the taunts of program participants. All of the foregoing, the Pierces contend, resulted in an unconstitutional promotion of religion by the state. Specifically, the Pierces maintain, Christianity was promoted over other religions, and religion was promoted over non-religion.

The school district concedes that from 1987 to 1992 it did not comply with the regulation insofar as the program allowed the release of students in the middle of the morning instead of immediately before the lunch break or at the end of the school day. However, the school district argues that nothing about its implementation of the statute contravened the Establishment Clause.

---

*Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), the district does have immunity from the Pierces' claim for punitive damages, a detail not addressed by the parties. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981).

4. None of the claims in the litigation are time-barred because the action was tolled until Amanda and James reached the age of majority. The Pierces' claim for injunctive relief was voluntarily dismissed from the complaint because the Pierces do not challenge the way the program is currently implemented.

Citing *Zorach*, which upheld New York's "released time" program against a facial Establishment Clause challenge, the district court granted summary judgment to defendant school district. Moreover, citing *Lee v. Weisman*, 505 U.S. 577, 587, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992), the district court found that the implementation of the program did not "coerce" anyone to support or participate in religion or its exercise. And, after carefully reviewing the Pierces' deposition testimony, the district court further concluded that there was no evidence to support a constitutional violation in the manner that the "released time" statute was implemented by the school district. The Pierces appealed.

## *DISCUSSION*

The Pierces contend that their "as applied" challenge of the "released time" policy is not precluded by *Zorach*. They argue that an undisputedly constitutional statute was applied to them in a manner that violated their Establishment Clause rights. We disagree. Although an "as applied" challenge of New York's education law is not precluded by *Zorach*, the Pierces' challenge evidences no constitutional violation by the school district because it is plainly controlled by *Zorach*'s rationale.

We review a district court's grant of summary judgment *de novo*. *See Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir.2003). When ruling on a summary judgment motion, we must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The Establishment Clause reads: "Congress shall make no law respecting an establishment of religion." U.S. Const.

amend. I. "[T]he Fourteenth Amendment makes [it] applicable with full force to the States and their school districts." *Lee v. Weisman*, 505 U.S. at 580, 112 S.Ct. 2649. New York State's Education Law § 3210(2)(b) establishes that "[a]bsence for religious observance and education shall be permitted under rules that the commissioner [of education] shall establish." Pursuant to that authority, the State's education commissioner promulgated the following regulation, the basis of the "released time" program challenged by the Pierces:

(a) Absence of a pupil from school during school hours for religious observance and education to be had outside the school building and grounds will be excused upon the request in writing signed by the parent or guardian of the pupil.

(b) The courses in religious observance and education must be maintained and operated by or under the control of duly constituted religious bodies.

. . .

(e) Such absence for a released time program . . . shall be for not more than one hour each week at the close of either the morning or afternoon session, or both, at a time to be fixed by the local school authorities; . . . in no event may any pupil be released for more than one hour a week. . . .

8 N.Y.C.R.R. § 109.2.

The Pierces concede that Supreme Court's upholding of New York's "released time" policy in *Zorach* precludes any claim of facial invalidity. Accordingly, their claim is that the school district violated the Constitution in its particular implementation of the policy during a window of years.

The *Zorach* Court examined the same New York law that authorized the policy that the defendant school district implemented. And it determined that the policy as announced in the statute was constitutional, despite the Court's having found

four years previously that a similar "released time" program was unconstitutional. *See Illinois ex rel. McCollum v. Bd. of Educ.,* 333 U.S. 203, 68 S.Ct. 461, 92 L.Ed. 649 (1948). *Zorach,* in declining to overrule *McCollum,* distinguished itself from implementations of "released time" programs that offend the Constitution; it effectively embraced Justice Frankfurter's position in *McCollum* that " 'released time' as a generalized conception, undefined by differentiating peculiarities, is not an issue for Constitutional adjudication." *Id.* at 225, 68 S.Ct. 461 (Frankfurter, J., concurring with three other justices, cited approvingly in *Zorach,* 343 U.S. at 315 n. 8, 72 S.Ct. 679). Indeed, the Court has subsequently clarified that there is "precedent [in Establishment Clause cases] for distinguishing between the validity of the statute on its face and its validity in particular applications." *Bowen v. Kendrick,* 487 U.S. 589, 602, 108 S.Ct. 2562, 101 L.Ed.2d 520 (1988). While the *Zorach* Court accepted the premise that "maladministration" of the New York statute could support a claim under the Establishment Clause, 343 U.S. at 312 n. 7, 72 S.Ct. 679, it suggested that for such an "as applied" claim to be viable, school authorities would need to be directly implicated in some form of coercion, something that the plaintiffs in *Zorach* could not show. *See id.* at 311, 72 S.Ct. 679.

█ The argument offered by the plaintiffs in *Zorach,* which the Court rejected, cannot be distinguished in any meaningful way from the argument the Pierces make here:

Their argument, stated elaborately in various ways, reduces itself to this: the weight and influence of the school is put behind a program for religious instruction; public school teachers police it, keeping tab on students who are released; the classroom activities come to a halt while the students who are re-

leased for religious instruction are on leave; the school is a crutch on which the churches are leaning for support in their religious training. . . .

*Id.* at 309, 72 S.Ct. 679.

The *Zorach* Court found that New York's "released time" program did not violate the Establishment Clause because, unlike the program at issue in *McCollum,* (1) no religious instruction took place inside public school classrooms; (2) no expenditure of public funds supported the program; and (3) the public school did not promote the instruction beyond simply collecting permission slips from parents. In *Zorach,* the Court found no constitutional violation because the schools only adjusted "their schedules to accommodate the religious needs of the people." *Zorach,* 343 U.S. at 315, 72 S.Ct. 679.

Nothing about the Pierces' case or their testimony about the particular implementation of the "released time" program in the defendant school district suggests a result different from the one reached by the Court in *Zorach.* Even taking all their allegations as true and granting all inferences in their favor, their case is plainly within the ambit of *Zorach* rather than *McCollum.* The program's implementation uses no public funds and involves no on-site religious instruction. The program is purely voluntary and there is no specific coercion or pressure brought to bear on non-participants by school officials. Indeed, the Pierces concede that "it was the students, not the School District, who said and did [the] hurtful things." There is, therefore, no government entanglement with religion sufficient to support an Establishment Clause violation here. That the churches are in close geographic proximity to the school and that a significant majority of students participated in the "released time" program in the school district, as the Pierces allege in their effort to distinguish this case from *Zorach,* are of

no constitutional moment. "Indeed, a serious constitutional issue would arise were we to presume to tell a church ... where it may fashion its places of worship." *Lanner v. Wimmer,* 662 F.2d 1349, 1359 (10th Cir.1981). And no constitutional significance may be attributed to the percentage of participating families, nor to the religious demographics of the school district. *See Zelman v. Simmons–Harris,* 536 U.S. 639, 652, 122 S.Ct. 2460, 153 L.Ed.2d 604 (2002) (refusing to find an Establishment Clause violation "[i]f numerous private choices, rather than the single choice of a government" determine the extent of participation in a religious education program (internal quotation marks omitted)). *Zorach* thus compels the result here. Because we conclude that the school district implemented the statute in a manner consistent with *Zorach,* we affirm the district court's grant of summary judgment in favor of the school district.

Although the Court has recently instructed that "the Constitution ... requires that we keep in mind the myriad, subtle ways in which the Establishment Clause can be eroded," *Santa Fe Indep. Sch. Dist. v. Doe,* 530 U.S. 290, 314, 120 S.Ct. 2266, 147 L.Ed.2d 295 (2000) (internal quotation marks omitted), it has also instructed that we should "not hold that every state action implicating religion is invalid if one or a few citizens find it offensive. People may take offense at all manner of religious as well as nonreligious messages, but offense alone does not in every case show a violation." *Lee,* 505 U.S. at 597–98, 112 S.Ct. 2649.

### *CONCLUSION*

For the foregoing reasons, the district court's order is hereby AFFIRMED.